## BENDER *v.* ENGEL.

PATENTS; INTERFERENCE; PRIORITY; CONCEPTION.

A senior party in an interference involving a storage-battery plate having a corrugated surface produced and consolidated by the repeated pressure insufficient to disrupt the surface material, and extending over the whole of such surface, will not be denied priority upon the theory that the plate machine relied upon by him for conception and reduction to practice was not shown to have been so adjusted as to roll and consolidate the tops of the ribs of the plates, and thus amount to conception, where it appears that he contemplated that the machine could finish and level the tops of the ribs, necessarily by an oscillating or rolling pressure, and that, in view of the nature of the metal use, the tops of the ribs require very slight rolling to bring them within the issue; and testimony of an expert who saw the operation states in effect that the machine did exert pressure upon such tops.

No. 935.   Patent Appeals.   Submitted November 13, 1914.   Decided December 7, 1914.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.        *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decision of an Assistant Commissioner of Patents in an interference proceeding awarding priority of invention to Frank Engel, the appellee.

The invention relates to storage-battery plates, and is set forth in four counts, as follows:

"1. A battery plate having an irregular surface with an outer stratum composed of metal that has been subjected to work effecting a substantially uniform consolidation of the particles thereof over the whole of said surface.

"2. A battery plate having a corrugated surface produced and consolidated by repeated pressure insufficient to disrupt the surface material, and extending over the whole of said surface.

"3. A battery plate having a surface shaped and consolidated throughout by repeated rolling pressures alternately in reverse directions at such angles as to work the metal without disrupting it.

"4. A battery plate having a surface shaped, toughened, and consolidated by rolling operations in reverse directions exerting pressures limited in force and direction so that the metal of said surface is not disrupted."

The appellee is superintendent of the works of the United States Light & Heating Company, successor to the National Battery Company. On November 14, 1907, he filed an application, No. 402,167, on a machine for producing leaden battery plates, and in his application disclosed the manner of producing such plates. This early machine was found by the Patent Office tribunals to be identical in its construction with that disclosed in the application here involved, and in which it is described as being used to produce the plates of the issue. Notwithstanding that the early machine was therefore capable of producing the plates of the issue, it is contended in behalf of the appellant that it is not shown that this machine was so adjusted as to roll and consolidate the *tops* of the ribs of the plates, and hence that the evidence falls far short of proving conception of the issue. The Examiner of Interfer-

ences, in discussing this phase of the case, said: "Counsel for
Bender lay considerable stress upon the matter of the rolling of
the tops of the ribs and its effect in producing a consolidated or
condensed condition throughout the complete surface of the
plates. Nothing is found in the issues of the interference, or
in the disclosure of the patent to Bender, which would indicate
that the rolling of the tops of the ribs constitutes other than
one of a plurality of steps or operations necessary to produce
the plate of the issue. When consideration is given to the fact
that the operation of the blades or cutters in forcing up the
ribs must necessarily work and consolidate said ribs throughout
to some considerable degree, it becomes apparent that, in order
to complete the operation and produce a plate of the character
specified, a very slight rolling of the tops of the ribs may be
all that will be required."

After a careful examination of the appellee's evidence, in-
cluding the specification in his early machine patent, the Ex-
aminer of Interferences reached the conclusion that the appellee
should be awarded the date of November 14, 1907, when he
filed his earlier application, for conception and reduction to
practice of all the counts of the interference, and, as this date
was prior to any date which could be accorded to appellant,
priority of invention was awarded appellee. The Board of
Examiners in chief, while agreeing that the early machine of
appellee was the same as that disclosed in the application in-
volved in this interference, and hence capable of producing the
plates of the interference, were not satisfied that the evidence
disclosed a conception of the first three counts of the issue prior
to appellant's filing date; that "if in fact Engel [appellee]
produced a plate embodying the subject-matter of the first three
counts prior to the date of the filing of Bender's application,
it was an accidental, unintended, and unappreciated result."
The Board therefore awarded these three counts to the appellant
and the last count to the appellee. The Assistant Commission-
er again reviewed the evidence and reversed this ruling as to
counts 1, 2, and 3, and awarded all the counts to Engel.

*Messrs. Kenyon & Kenyon* and *Richard Eyre* for the appellant.

*Mr. Edwin B. Tower, Jr.,* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

We will now very briefly review the evidence. In his early machine application which, as we have seen, was filed in November, 1907, we find the following statement: "At the same time the formers are caused to approach each other slowly so that the blades act upon the blank with a rolling motion, and gradually displace the lead in a direction from the center core of the plate towards the axes of the formers. If the blank is of proper thickness, the lead will be displaced as described, until it comes in contact with the edges of the separators $g^2$, so that the fins or webs of the finished plate shall be of uniform height above the center core." It will thus be seen that in his early application it was contemplated that the separators could finish and level the tops of the ribs, and necessarily by an oscillating or rolling pressure. Having in mind the character of the metal operated upon, it is obvious that the tops of the ribs require very slight rolling to bring them within the claims of the issue. Engel, testifying about the function of the spacers in his early machine, when plates were made for and successfully used by the Home Telephone & Telegraph Company in 1907, said: "They were brought in contact with the top surface of the ribs so as to compress them, densify them, make the surfaces smooth and symmetrical." The chemist of the United States Light & Heating Company, a Mr. Carpenter, testified that he witnessed the manufacture of said plates for the Home Telephone & Telegraph Company in 1907, and examined them from time to time as they were being swedged. He was asked what character the plates had, and, in the course of his answer said: "Probably the most notable thing at that time was the fact that the lead seemed extremely dense, as I remember, everybody remarked how dense the lead seemed that is, it was very ap-

parent to the eye that the surface was highly burnished." He was then asked to describe the process by which "the plates for the Home Telephone & Telegraph Company were made," and replied that they were made in an Engel swedging machine; that the plates are placed into a frame, and that this frame reciprocates between two gangs of formers; that "this gang of formers is very gradually embedded into the blank of lead which is reciprocated between the formers, and this blank of lead is passed back and forth between these formers until the blades of the formers gradually force their way into the blank of lead to the desired depth, and this depth is governed by the height of the separator between the plates; that is, when the plates have reached the proper depth they strike these separators and force the top of the fins downward, and after they have struck hard to the top of these separators, the plates have gone as far as they can go and the plate is considered swedged." The Examiners in Chief conceded that this answer would have afforded Engel a perfect corroboration as to the requisite feature of the counts had it not been for the fact that the witness couched his answer in the present, instead of the past, tense. The Assistant Commissioner was of the view that the Examiners in Chief were hypercritical, as it was perfectly apparent that the witness intended to refer to the past as well as the present. The Assistant Commissioner further said: "It should be further noted that the distinct impression gained from the reading of the whole of this witness's testimony is one of candor and readiness to give the information called for by the questions in the possession of the witness. Furthermore, the record shows that no objection on the ground of irresponsiveness was made by counsel for Bender to the answers of Carpenter. * * * And had there been any doubt that they did not fully answer the questions as put to Carpenter, the cross-examination should and would have removed that doubt." When we bear in mind that it is conceded, even by the Board of Examiners in Chief, that the early machine and the machine described in the present application were identical, it is not at all strange that the witness should have used the present, instead of the past, tense.

Moreover, his testimony was but an elaboration of the mode of operation as described in the early machine application. In addition to the testimony of Mr. Carpenter, a Mr. Urban testified that "the punching which I called the spacer had a curvature which shaped the top of the ribs when the lead by compression rose up to it."

We are fully convinced from the evidence before us that Engel has proved disclosure and reduction to practice of all the counts of the issue prior to the earliest date that can be accorded Bender. We therefore affirm the decision.

*Affirmed.*